**James Wesley WARD, Plaintiff,**

v.

**ARKANSAS STATE POLICE, Defendant.**

**No. LR–C–77–256.**

United States District Court,
E. D. Arkansas, W. D.

May 24, 1982.

John W. Walker, Little Rock, Ark., for plaintiff.

Debbye Thedford Nye, Asst. Atty. Gen., State of Ark., Little Rock, Ark., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

WOODS, District Judge.

### FINDINGS OF FACT

1. Presently, the hiring of applicants for the position with the Arkansas State Police as a Trooper is governed by a Consent Decree entered on February 1, 1978 by the late United States District Judge Terry Shell in *United States of America v. State of Arkansas, et al.,* LR–C–78–25 and by Ark.Stat.Ann. § 42–403.2 (Cum.Supp.1981) and §§ 42–405 and 406 (Repl.Vol.1977). The pertinent parts of the consent decree appear in the original opinion in this case. 493 F.Supp. 1315, 1317 n. 1.

2. The procedures for being placed on the eligibility list for hiring as an Arkansas State Trooper by the Arkansas State Police Department require: (a) filing of an application; (b) successful passing of a written examination; (c) a background investigation; and (d) an interview with the applicant.

3. The background investigation is the most important part of the hiring process, but it is only one of the four steps that must be taken and successfully completed prior to being placed on the eligibility list.

4. The Director of the State Police in 1975–76 was Colonel Doug Harp. Colonel Harp had the sole responsibility for hiring State Police Troopers subject to the approval by the Arkansas State Police Commission.

5. Plaintiff Ward applied for the position of Trooper with the Arkansas State Police four times. They were as follows:

1. June 10, 1970
2. January 7, 1975
3. May 24, 1976
4. January 17, 1979

6. Plaintiff Ward took the Arkansas State Police entrance examination four times. They were administered on the following dates: (1) June 29, 1970, (2) February 18, 1975, (3) September 14, 1976, and (4) January 15, 1979.

7. Plaintiff Ward successfully passed the January 15, 1979 entrance examination.

8. The Arkansas State Police requested on February 20, 1979 that a background investigation for the position of Trooper with the Department of Arkansas State Police be conducted on Plaintiff Ward. That investigation was conducted by Investigator Bill Eddins of the Personnel Section of the Arkansas State Police. The final report was dated March 12, 1979.

9. The background investigation of plaintiff conducted by Investigator Eddins was introduced into evidence. (Def.Ex. 2.) In this report, Eddins had recommended against hiring plaintiff. He said his recommendation was based on the derogatory information contained therein, which the plaintiff had never explained.

10. The derogatory information contained in the Eddins report was for the most part concerned with Ward's employment history. He worked for the Arkansas Regional Juvenile Program at Helena, Arkansas from 1972–75. He was not retained after the federal grant expired, although his supervisor stated that he could have retained him. Ward was criticized because "he stayed away from the office too long on cases, and was not conforming to the rules of the office ... did not apply himself as he should have." A co-worker stated that Ward "will not follow directions ... and will not conform to rules." (Def.Ex. 2, p. 6.)

11. Ward was employed by the Greenville, Mississippi Police Department from 1975 until 1977 when he resigned. Five of plaintiff's supervisors in this department were interviewed, including the Chief of Police. They unanimously recommended that plaintiff not be hired. He was variously described as having a bad attitude, being uninterested in his job, undependable, consistently late for work, high tempered, and lacking in good judgment. (Def.Ex. 2, pp. 7–8.) Captain Malcolm Wynn of the Greenville, Mississippi Police Department, who was for several months plaintiff's shift commander, testified in the May 13, 1982 hearing. Captain Wynn, who is black, said that plaintiff was not interested in his work, was a poor police officer, and was late to work on a considerable number of occasions. He said that on two occasions he had to go to plaintiff's home and physically get him out of bed and to work. Captain Wynn said that he would not recommend plaintiff for rehiring. Sgt. George Hollis of the Greenville, Mississippi Police Department, also testified on May 13, 1982. He said that he was hired a short time after plaintiff by the Greenville Police Department. Hollis described plaintiff as a poor officer, abusive and discourteous to the public, and often late in reporting for work.

12. From May, 1977 to October, 1977, Ward worked for the Police Department of Pine Bluff, Arkansas. The Chief of Police of that department said that Ward "refused to accept orders and was basically lazy." (Def.Ex. 2, pp. 8–9.) He was terminated from this job because he broke departmental rules by working after hours in a liquor store.

13. From December, 1977 to March, 1978, plaintiff was employed by the Hum-

phrey, Arkansas Police Department. He was dismissed because of citizens' complaints, failure to check in and out on his radio, failure to appear in court, and failure to conform to departmental rules. (Def.Ex. 2, p. 9.)

14. Afterwards, plaintiff worked for short periods at a Greenville, Mississippi Department Store and a shoe store. Because of his poor job performance, neither establishment said they would rehire him. (Def.Ex. 2, p. 9.)

15. In addition to this rather dismal employment history, the background investigation disclosed that Ward's credit history was less than favorable. (Def.Ex. 2, pp. 4-5.)

16. Before conducting the background investigation on Ward, Investigator Eddins called him on March 1, 1979 and asked if he was still interested in a position with the Arkansas State Police. Receiving an affirmative answer, Eddins advised him that in a few days he would call back to set a time for an interview.

17. On this same day Ward left for Ft. Jackson, S. C. to begin an enlistment in the U. S. Army, according to the testimony of his mother confirming the text of her letter of March 9, 1979 (Def.Ex. 3.)

18. It is reasonable to assume that he must have actually enlisted in the Army a few days prior to leaving for South Carolina on March 1, 1979.

19. Therefore, plaintiff would seem to have known that he was going into the Army at the time he told Eddins that he was still interested in working for the State Police.

20. On March 6, 1979 Eddins called plaintiff's residence and was told that his whereabouts were unknown.

21. On March 8, 1979 he again called, and plaintiff's mother stated that plaintiff's whereabouts were unknown. He left a message for plaintiff to call him as soon as possible. At all these times plaintiff was already in the Army at Ft. Jackson, S. C., having left for this duty on March 1, 1979, according to the letter from plaintiff's mother to the State Police dated March 9, 1979. (Def.Ex. 3.) No reason has been advanced as to why plaintiff and his family withheld the information concerning his enlistment from the State Police until March 9, 1980.

22. The Arkansas State Police did not complete its hiring procedures with respect to Plaintiff Ward because he voluntarily withdrew himself from the hiring process in 1979 without affording the Arkansas State Police Investigator an opportunity to interview him and before Colonel Doug Harp had an opportunity to act on his application.

23. Prior to the February 18, 1975 testing date, Plaintiff Ward had had no police work experience. Prior to the September 14, 1976 testing date, Plaintiff Ward had less than one year of police work experience.

24. Prior to the January 15, 1979 test date, Plaintiff Ward had over two years of police work experience plus 60 hours of credit majoring in Criminal Justice at the Mississippi Valley State College. Moreover, Plaintiff Ward had successfully completed the basic police course given at the Arkansas Law Enforcement Academy in August of 1977.

25. If Plaintiff Ward had successfully passed the 1975 or 1976 testing, Plaintiff Ward would still have had to successfully complete the remaining hiring process. A background investigation would have been conducted at that time.

26. If the results of the background investigation to be conducted in 1975 and 1976 had been negative, then Plaintiff Ward would have been removed from the application process, at that time.

27. Plaintiff Ward's prior police work experience does not indicate that he possessed the ability to function as a good police officer.

28. The Consent Decree entered February 1, 1978 provides for individual remedies. Based upon Plaintiff Ward's application and testing history, he would have been considered pursuant to the Consent Decree guidelines to qualify as an "Eligibility List A" person.

29. Back pay would be paid only if the successful Eligibility List A person was hired.

30. Plaintiff Ward took the revised test required by the Consent Decree in 1979 and passed it. The background investigation was conducted pursuant to Plaintiff Ward's successful passing of the examination. However, Ward voluntarily withdrew prior to the completion of the selection process. Plaintiff Ward voluntarily abandoned all attempts to seek employment with the Arkansas State Police and entered the United States Army.

31. Plaintiff has failed to establish that his race was the cause of the failure of the Arkansas State Police to hire him.

32. Plaintiff was not hired by the Arkansas State Police because of his poor employment history and because he abandoned his efforts to become a State Trooper and entered the Army while his background investigation was in progress.

## CONCLUSIONS OF LAW

1. The Consent Decree entered on February 1, 1978 does not raise an inference that the testing procedures utilized by the Arkansas State Police prior to 1978 created an adverse impact upon employment opportunities of blacks. The United States Court of Appeals in its opinion filed July 10, 1981 at 653 F.2d 349 stated the following:

> The Consent Decree was not a final judgment on the merits of Ward's claim for back pay under Title VII. All parties agree there was no finding or admission of liability by Arkansas.[1] *United States v. Arkansas,* [Civ. No. LR–C–78–25 (E.D. Ark.1978)] Slip Op. at 2, p. 4.

■ 2. In *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207, decided on March 4, 1981, the Supreme Court approved the basic allocation of burdens and order of proof in a Title VII case as defined in *McDonnell Douglas Corp. v. Green,* 411 U.S.

792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 802, 93 S.Ct. at 1824. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. These procedures are also applicable to disparate treatment claims brought pursuant to 42 U.S.C. § 1981. *Kenyatta v. Bookey Packing Co.,* 649 F.2d 552 (8th Cir. 1981).

3. In the case at bar, the plaintiff has failed to prove a prima facie case of discrimination. His own testimony impels an opposite conclusion. Assuming, however, that the plaintiff had made a prima facie case, the defendant has more than sustained its burden of articulating "some legitimate nondiscriminatory reason" for its employment decision in regard to this. If there is any proof in this record that the State Police Department's personnel actions were a pretext for racial discrimination, we have failed to find it.

4. In the *Burdine* case, *supra* the Supreme Court makes it perfectly clear that, after the various shifts in the burden of going forward with the evidence, the ultimate burden of both proof and persuasion lies with the plaintiff to establish the existence of unlawful discrimination by a preponderance of the evidence. Clearly the plaintiff has failed to sustain this ultimate burden of proof or persuasion.

■ 5. Plaintiff must prove (1) that he belongs to a racial minority; (2) that he applied for a vacant position for which he was qualified; (3) that despite his qualifications he was rejected for the position of Trooper with the Arkansas State Police;

---

**1.** For the purpose of our decision in this case, we have assumed that the first three tests taken by plaintiff were invalid, although no specif-

ic proof has been introduced with respect to these tests other than reference thereto in the Consent Decree.

and (4) that the Arkansas State Police continued to seek applicants of Plaintiff's qualifications for the job. He has failed to present this proof. Unquestionably, Plaintiff was not qualified for the position.

6. Plaintiff was denied employment with the Arkansas State Police not because of his race, but rather because he was unqualified and because he failed to successfully complete a job-related selection process.